IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 18–cv–02704–KMT

RAFAEL TORRES,

 Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, an agency of the State of Colorado,

 Defendant.

## ORDER

 Before the court is "Defendant's Motion for Summary Judgment." (["Motion"], Doc. No. 33.) Plaintiff has responded in opposition to the Motion, and Defendant has replied. (["Response"], Doc. No. 36; ["Reply"], Doc. No. 37.) For the following reasons, the Motion is GRANTED.

### STATEMENT OF THE CASE

 Plaintiff Rafael Torres brings this lawsuit against his former employer, the Colorado Department of Corrections ["CDOC"], alleging violations of Title VII of the Civil Rights Act of 1964, as amended ["Title VII"], 42 U.S.C. §§ 2000(e) *et seq.*. (["Complaint"], Doc. No. 16 at ¶¶ 1-2, 4, 18-23.) Torres, who is Hispanic, began working for CDOC, in February 2014, as a Health Specialist at the La Vista Correctional Facility in Pueblo, Colorado. (*Id.* at ¶ 8; Mot. 2 ¶ 1; Mot. Ex. A ["White Affidavit"], at ¶ 7.) In October 2014, Plaintiff transferred to the CDOC's

Community Re-Entry Center in Denver, Colorado, where he began working as a Community Re-Entry Specialist.[1] (White Aff. ¶ 8; Mot. Ex. B ["Torres Deposition"] at 56:9-20.) Following a brief subsequent stint at the CDOC's Englewood Parole Office, Torres eventually transferred, in June 2015, to the CDOC's Colorado Springs Parole Office. (White Aff. ¶¶ 9-10; Torres Dep. 58:5-60:8; Resp. Ex. 2 ["White Deposition"], at 19:9-16.)

### *Professional Standards Investigation PS2016000360*

In early 2016, the CDOC's Office of the Inspector General ["OIG"], the entity responsible for investigating misconduct by CDOC employees, opened an investigation into Torres's coworker, Lamar Richardson ["Mr. Richardson"]. (Mot. Ex. E ["OIG Report I"] at 1; White Aff. ¶ 13.) As part of that investigation, on March 3, 2016, Plaintiff was questioned by an OIG investigator, Adam Cummings ["Mr. Cummings"]. (*Id.*) During the interview, Mr. Cummings intentionally disclosed certain details of the investigation to Torres, in a purported "attempt to elicit information he may have." (*Id.*) Plaintiff was explicitly instructed, at the end of the questioning, "not to share any information about the investigation with anyone," as confidentiality "was imperative to ensure the integrity of the investigation." (*Id.*)

One day later, on March 4, 2016, Mr. Cummings received a text message from the subject of the investigation, Mr. Richardson, which stated as follows:

> What's going on Adam. It was brought to may [sic] attention that you have several questions that you need to ask me about a lie that was reported. At your earliest convenience you can schedule a meeting with me at anytime to address any questions you have. Thanks

---

[1] A Community Re-Entry Specialist is "responsible for providing resources to parolees reentering society, including housing, education, clothing, food, and employment." (White Aff. ¶ 11; *see* Torres Dep. 56:24-57:12.)

2

(Mot. Ex. F; *see id.*)  Torres, when later confronted by the OIG, "initially lied about providing information to [Mr.] Richardson."  (OIG Rep. I at 2.)  Ultimately, however, Plaintiff confessed that he had, in fact, discussed details of his interview with the investigatory subject.  (*Id.*; Mot. Ex. G.)  Plaintiff's conduct was later determined to have "violated CDOC's policies and compromised the outcome of the investigation."  (White Aff. ¶ 13; *see* OIG Rep. at 2.)

### *Professional Standards Investigation PS201600500*

On March 7, 2016, the CDOC was contacted by an absconded parolee, who was currently incarcerated at the Jefferson County Jail.  (Mot. Ex. H.)  The parolee alleged that Torres, while acting as her Community Re-Entry Specialist, sexually assaulted her in mid-2015.  (*Id.*; Mot. Ex. J ["OIG Report II"] at 1-2; White Aff. ¶ 15.)  The OIG, in accordance with CDOC policy, immediately opened an investigation into the parolee's allegations.  (OIG Rep. II at 1; White Aff. ¶¶ 16-17; *see* Mot. Ex. C, AR-1450-01, IV. RR, at 8; Mot. Ex. D, AR 1150-04, IV. C. 4, at 3.)  The Colorado Springs Police Department, for its part, opened a separate criminal investigation into the alleged incident.[2]  (OIG Rep. II at 1; Mot. Ex. I.)  On March 9, 2016, Plaintiff was placed on paid administrative leave "until further notice."  (Mot. Ex. K at 1; White Aff. ¶ 18.)

On April 19, 2016, the OIG interviewed Torres regarding the parolee's allegations, while his attorney was also present.  (OIG Rep. II at 4.)  During the interview, Torres confirmed that he had previously provided re-entry services to the parolee, but denied any improper contact.  (*Id.*)

---

[2] The summary judgment record contains no evidence regarding the outcome of the criminal investigation into the sexual misconduct allegations against Torres.  As of Plaintiff's termination, however, no criminal charges had yet been filed against Torres.  (White Aff. ¶ 33.)  Plaintiff reports, without accompanying evidence, that the Colorado Springs Police Department "never found evidence of criminal wrongdoing."  (Resp. 4.)

Plaintiff explicitly denied having "any contact with [the parolee] outside of the Colorado Springs Parole Office." (*Id.*) Then, in response to a certain line of questioning, Plaintiff's attorney "became extremely upset." (*Id.*) The attorney was eventually "asked to leave the interview." (*Id.*) When Plaintiff also "stood to leave," the OIG investigator warned him that "if he left the interview it would be considered a refusal to participate in the investigation and his appointing authority would be notified." (*Id.*) Plaintiff was explicitly advised that his "failure to cooperate with the investigation could lead to his termination." (*Id.* at 4-5.) Notwithstanding this warning, Torres left the interview. (*Id.* at 5.)

Plaintiff subsequently refused the OIG's efforts to reschedule the interview, and declined to take a polygraph test regarding the allegations made against him. (*Id.* at 5; Mot. Ex. L at 2-3; White Aff. ¶ 26.) Ultimately, the OIG did not reach "any conclusion," as to the veracity of the parolee's allegations, given that Torres "failed to cooperate" with the investigation. (OIG Rep. II at 5.) However, the OIG did conclude that Plaintiff had "departed from the truth" during his April 19, 2016 interview. (*Id.*) Specifically, Plaintiff's "statements that he never had any contact with [the parolee] outside of normal business hours," were contradicted by the parolee's cell phone records.[3] (*Id.*; White Aff. ¶ 19.)

### *Termination of Employment*

Upon completion of the two respective investigations, the OIG's findings were submitted to Plaintiff's supervisor, Susan White ["Ms. White"]. (White Aff. ¶¶ 13, 19.) On April 26, 2016, Ms. White met with Torres "to discuss and exchange information concerning allegations

---

[3] The parolee's cell phone records were initially obtained, via search warrant, by the Colorado Springs Police Department, and later provided to the OIG, upon its request. (OIG Rep. II at 1-2.)

4

of interfering with a professional standards investigation (PS201600502), allegations of sexual misconduct with an offender under supervision of parole (PS201600500), and failure to cooperate with an investigation." (White Aff. ¶¶ 20, 22; Mot. Ex. L at 1-2.) Although he was given "an opportunity to respond to the allegations and present mitigating information," Plaintiff ultimately "refused to answer certain questions," and declined the opportunity to "complete his OIG investigation." (White Aff. ¶¶ 23-24, 26; Mot. Ex. L at 2-3.) Ms. White authorized Plaintiff to submit "additional information to consider, including responses to the questions he did not answer at the meeting," on or before May 2, 2016. (White Aff. ¶ 25; Mot. Ex. L at 3.) Torres, however, declined to provide any such additional information to his supervisor. (White Aff. ¶ 27; Mot. Ex. L at 3.)

By letter dated May 6, 2016, Ms. White terminated Plaintiff's employment. (White Aff. ¶ 28; Mot. Ex. L at 1, 4.) Ms. White predicated her decision to terminate on "both Professional Standards investigations, which revealed that [] Torres shared confidential information about an investigation with the subject of the investigation and was not truthful with investigators about that conduct, and that he failed to cooperate with the investigation into allegations of sexual misconduct involving an offender under parole supervision and was not truthful with investigators about his contact with the parolee." (White Aff. ¶ 29; Mot. Ex. L at 3.) Ms. White also based her decision, in part, on her finding that Plaintiff's conduct violated several CDOC policies. (White Aff. ¶¶ 31-32; Mot. Ex. L at 3-4.) Torres, on the other hand, contends that he was terminated by CDOC, because of his race. (Compl. ¶ 7.)

Following these events, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ["EEOC"]. (Compl. ¶ 5; ["Answer"], Doc. No. 23 at ¶

5

5.) On October 23, 2018, after receiving notice of his right to sue from the EEOC, Plaintiff filed this action, asserting Title VII claims for race discrimination and retaliation.[4] (Compl. ¶¶ 6, 17-26.) At the close of discovery, on November 14, 2019, Defendant moved for summary judgment on both of Plaintiff's claims. (Mot. 1-2.)

## STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249

---

[4] The Amended Complaint also references violations of the Americans with Disabilities Act, 42 U.S.C. § 12112. (*See* Compl. ¶¶ 7, 9.) However, Plaintiff neither argues, nor produces evidence to show, that he was discriminated against due to a disability. Accordingly, the court construes any such claims to have been abandoned. *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (declining to consider issues that are "unaccompanied by some effort at developed argumentation").

(1986)).  Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law.  *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only.  *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  However, this standard does not require the court to make unreasonable inferences in favor of the non-moving party.  *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008).  The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case.  *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

## ANALYSIS

### A. *Evidentiary Objections*

The exhibits attached to the Response include a three-page written statement, which is signed by Plaintiff, entitled "Culture of Bias." (*See* Resp. Ex. 1.) CDOC objects to this submission, because it is neither dated, nor notarized. (Reply 2.) In addition, CDOC contends that certain statements found in Torres's response brief are not supported by any evidence in the summary judgment record. (*Id.* at 2-4.)

Unsworn statements are not competent summary judgment evidence to create a genuine issue as to any material fact. *See Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995). Accordingly, the court cannot consider Plaintiff's unsworn statement as admissible evidence. To the extent any of the facts that Plaintiff relies upon are supported by other admissible evidence in the record, the court has considered that evidence. Needless to say, any factual representation that is not supported by the record is irrelevant.

### B. *The Legal Standard for Title VII Discrimination and Retaliation Claims*

Under Title VII, it is unlawful for an employer to discriminate against an employee because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e)-2(a). In addition, pursuant to 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."

Claims of employment discrimination or retaliation can be established through either direct or circumstantial evidence. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (discrimination); *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1226 (10th Cir. 2008)

(retaliation). If a plaintiff relies on circumstantial evidence, as Torres does here, his claim is analyzed under the *McDonnell Douglas* burden-shifting framework. *Singh v. Cordle*, 936 F.3d 1022, 1037, 1042 (10th Cir. 2019). Under this framework, the plaintiff has the initial burden of making a *prima facie* case. *Id.* at 1037 (citing *DePaula*, 859 F.3d at 969-70). If he does so, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012)). Once such a showing has been made, the burden shifts back to the plaintiff to prove that the employer's proffered reason is a pretext. *Id.* (quoting *Daniels*, 701 F.3d at 627).

## C. *The Race Discrimination Claim*[5]

To establish a *prima facie* case of race discrimination under Title VII, a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action; and (3) the adverse employment action "occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

---

[5] Plaintiff's operative pleading alleges discrimination, exclusively based on race. (*See* Compl. 1-8.) In his Response, however, Plaintiff states that he was discriminated against, due to his "race and/or national origin." (Resp. 1.) Under Title VII, "race" and "national origin" are ideologically distinct. *See Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973) ("The term 'national origin' on its face refers to the country where a person is born, or, more broadly, the country from which his or her ancestors came."); *Roach v. Dresser Indus. Valve & Instrument Div.*, 494 F. Supp. 215, 216 (W.D. La. 1980) ("The legislative history of [Title VII] enunciates precisely that a person's national origin has nothing to do with color, religion, or race."). Torres, who is Hispanic, has neither alleged, nor produced evidence to show, his country of origin. As such, he cannot proceed on a claim of national origin discrimination. *See Lapine v. Edward Marshall Boehm, Inc.*, No. 89 C 8420, 1990 WL 43572, at *5 (N.D. Ill. March 28, 1990) (dismissing a national origin claim, because "stating that one is Jewish gives no indication of that individual's country of origin"); *Kun v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 949 F. Supp. 13, 19 (D.D.C. 1996) ("[A]llegations of race discrimination are not relevant to a claim of national origin discrimination[.]").

Here, Defendant does not dispute, for purposes of the summary judgment analysis, that Plaintiff has met the first two elements of his *prima facie* case.  (Mot. 10.)  The CDOC argues, instead, that Torres cannot satisfy the final element of his claim.  (*Id.*)  Specifically, Defendant argues that "the[] undisputed facts do not permit an inference that [Plaintiff's] termination was motivated by discriminatory intent."  (*Id.*)

"The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination."  *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)) (alteration omitted).  An "inference of discrimination" can be established in a variety of ways, such as through evidence of "actions or remarks made by decisionmakers, preferential treatment given to employees outside the protected class, or more generally, upon the timing or sequence of events leading to [the] plaintiff's termination."  *Barlow v. C.R. Eng., Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)) (quotation marks omitted).  Only a "small amount of proof [is] necessary to create an inference of discrimination."  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quoting *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)).

In his Response, Plaintiff argues that he can establish the third element of his *prima facie* case, because he "was treated less favorably than others not in his protected class."  (Resp. 8-9.)  Plaintiff alleges, specifically, that a non-Hispanic employee, who was "under criminal investigation," was "kept employed" by the CDOC "until [the] investigation was finished."  (*Id.*

at 11.) Plaintiff claims that the purported comparator "was never terminated and eventually allowed to retire from the [CDOC]." (*Id.*)

In the Tenth Circuit, "an inference of discrimination" can be shown through evidence "that the employer treated similarly situated employees more favorably." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). Individuals are considered "similarly situated," for purposes of Title VII, "when they deal with the same supervisor, are subjected to the same standards governing performance evaluation and discipline, and have engaged in conduct of 'comparable seriousness.'" *PVNF*, 487 F.3d at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)). "In determining whether two employees are similarly situated, a court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees." *McGowan*, 472 F.3d at 745 (citing *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)).

In his Response, Torres appears to conflate evidence regarding two separate CDOC employees, who were also criminally investigated, but who were not ultimately terminated: (1) L.Z., a former Parole Supervisor in the CDOC's Westminster office, who retired after he was involved in a physical altercation at a local sporting event; and (2) P.B., a CDOC employee at an unspecified location, who was charged with driving under the influence, and was later demoted for the infraction. (White Dep. 37:23-39:17, 47:16-49:10; *see* Torres Dep. 189:1-190:5.)

This comparator evidence, even construed in Plaintiff's favor, falls far short of establishing an inference of discrimination. Specifically, Torres has failed to show, or even to allege, that the purportedly similarly situated employees shared his same job or responsibilities;

11

that they had his same disciplinary history; or that they violated workplace policies of "comparable seriousness." *See PVNF*, 487 F.3d at 801. Only one of the alleged comparator employees, P.B., was ever subject to discipline by Plaintiff's same supervisor. *See Herrera v. United Airlines, Inc.*, 754 F. App'x 684, 692-93 (10th Cir. 2018) ("Bragg did not 'deal with the same supervisor' as Herrera. He is thus not 'similarly situated' to Herrera and not an appropriate comparator.") (citations omitted). And, as to P.B., there is no evidence regarding the position he held, the workplace rule he was found to have violated, or how his misconduct compared to that of Plaintiff's. Indeed, it is unclear from the record whether P.B. is even outside of Plaintiff's protected class. (*See* White Dep. 38:8-14.)

In further attempt to show disparate treatment, Plaintiff alleges that the CDOC initially denied his requests to transfer to the Colorado Springs Parole Office, and instead, filled the position with non-Hispanic individuals. (Resp. 9-10.) Even taken as true, however, these facts fail to establish a *prima facie* case of discrimination. Specifically, there is no evidence that Plaintiff's transfer requests were handled any differently than other CDOC employee transfer requests, or that he was adversely affected by the delay in his transfer. *See Amro v. Boeing Co.*, 232 F.3d 790, 797-98 (10th Cir. 2000) (holding that the delay of an employee's lateral transfer, without additional evidence, did not rise to the level of actionable discrimination).

In his Response, Plaintiff also references certain "treatment" by his supervisors, which he deems to have been "discriminatory in nature." (Resp. 10.) "For actions or remarks to support such an inference of discriminatory intent, the plaintiff must demonstrate a nexus between the actions or remarks and the decision to terminate." *Hare v. Denver Merchandise Mart, Inc.*, 255 F. App'x 298, 303 (10th Cir. 2007) (citing *Plotke*, 405 F.3d at 1100). To establish such a nexus,

12

the actions or remarks must have been made by someone involved in the decision to terminate, and proximate in time to the termination. *Hare*, 255 F. App'x at 303.

At his deposition, Plaintiff identified three CDOC supervisors—Allison Morgan, Susan White, and Christine Richard—who allegedly discriminated against him by terminating his employment. (Torres Dep. 181:8-16, 182:12-25, 183:9-11.) In that same deposition, however, Plaintiff conceded that none of his supervisors ever said anything derogatory about his race. (*Id.* at 183:3-17, 187:7-18.) Plaintiff also admitted that he did not know who, in fact, fired him. (*Id.* at 182:15-21.) To show discriminatory animus by Ms. White, specifically, Plaintiff points to an incident, where he "complained to Susan White about Christine Richard and a hostile work environment, and was ignored." (*Id.* at 184:25-185:10; *see* Resp. 10.) However, Torres fails to explain how Ms. White's conduct was, in any way, related to his race.[6]

Finally, Torres argues that the temporal proximity between the parolee's complaint of sexual misconduct, on March 7, 2016, and his termination, on May 6, 2016, "raises the inference of discriminatory practice" by the CDOC. (Resp. 11.) "Depending on the specific facts of the case, temporal proximity can contribute to an inference of discrimination." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008) (citation omitted); *see Plotke*, 405 F.3d at 1101 (stating that an inference of discriminatory motive can be shown by "the timing or events leading to [the employee's] termination"). Here, Torres contends that his employer made "a rush to judgment," by firing him "only two months" after the OIG opened an investigation into the

---

[6] Torres also devotes significant portions of his Response to the assertion that OIG investigators did not advise him of his Miranda rights during their investigation. (Resp. 9-10, 12-13.) Plaintiff contends that CDOC policy "requires a Miranda rights warning" be given in such circumstances. (*Id.* at 9-10.) Even if true, however, Plaintiff does not explain how the CDOC's failure to give him a Miranda warning was connected to his Title VII protected status.

13

parolee's allegations. (Resp. 11.) But Plaintiff fails to explain how the timing of these events, alone, suggests that his termination was unlawfully predicated upon his race. As such, his argument fails. *See Laul v. Los Alamos Nat'l Labs.*, 714 F. App'x 832, 836 (10th Cir. 2017) (finding no inference of discrimination from evidence that the plaintiff received a positive performance evaluation prior to his termination); *c.f. Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1126-27 (D. Colo. 2016) (finding an inference of discrimination, where the evidence showed that "at approximately the same time" that the plaintiff was terminated, her employer "was hiring new employees to perform the very same tasks").

On this record, then, Plaintiff has failed to meet his summary judgment burden to demonstrate circumstances giving rise to an inference of discrimination. As a result, he cannot satisfy the third element of his *prima facie* case for Title VII discrimination. Accordingly, summary judgment is warranted as to this claim. *See Luster v. Vilsack*, 667 F.3d 1089, 1096 (10th Cir. 2011) (affirming dismissal of a Title VII discrimination claim for lack of evidence giving rise to an inference of discrimination).

### D. The Retaliation Claim

Torres also alleges that he was unlawfully retaliated against for "complaints" that he made against his supervisors. (Compl. ¶¶ 23-24.) The CDOC now moves to dismiss the retaliation claim, on the basis that Torres cannot establish that he engaged in any protected activity. (Mot. 17.) In addition, Defendant argues that Plaintiff cannot show a causal connection between his complaints and his termination. (*Id.*)

To establish a *prima facie* retaliation claim under Title VII, a plaintiff must show: (1) engagement in activity protected under Title VII; (2) a "materially adverse" employment action;

and (3) a causal connection between the protected activity and the materially adverse employment action. *Singh v. Cordle*, 936 F.3d 1022, 1042 (10th Cir. 2019) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)).

On this issue, Torres has failed to raise a triable issue of fact as to whether he engaged in "protected opposition to discrimination." *See Luster*, 667 F.3d at 1096. The sole basis for Torres's retaliation claim is that he "filed complaints against his supervisors before he was terminated in May of 2016." (Resp. 13-14; *see* Compl. ¶ 24.) Specifically, Torres testified that, on one occasion, he sent his supervisor, Ms. White, "a whole list of e-mails with the abuse of discrepancies in our grievances." (Torres Dep. 185:21-186:3.) Torres further testified that, on another occasion, he sent an email to Ms. White regarding his "grievances with Ms. Christine Richard." (*Id.* at 199:20-25.) Plaintiff also testified that he told his former supervisor, Jana Curtin, about "the hot mess that was going on down there." (*Id.* at 199:25-200:2.) However, none of these "complaints" mentions, or even obliquely alludes to, race discrimination, or any other practice made unlawful by Title VII. *See Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) ("Opposition to an employer's conduct is protected by [Title VII's anti-retaliation provision] only if it is opposition to a 'practice made an unlawful employment practice by Title VII.") (alteration omitted); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 n.13 (10th Cir. 2008) ("[A] vague reference to discrimination and harassment without any indication that this misconduct was motivated by race (or any other category protected by Title VII) does not constitute protected activity and will not support a retaliation claim."); *Robinson v. Dean Foods Co.*, 654 F. Supp. 2d 1268, 1283 (D. Colo. 2009) ("This complaint does not implicate race, sex, or other unlawful discrimination and, thus, is not

protected opposition to discrimination."). Nor is there any other evidence showing that Torres "conveyed" his "concern" to CDOC regarding unlawful discrimination. *See Hinds*, 523 F.3d at 1202-3 (10th Cir. 2008) ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]."). Absent such evidence, Plaintiff cannot establish a *prima facie* retaliation claim. *See Lucas v. Office of Colo. State Pub. Def.*, 705 F. App'x 700, 706 (10th Cir. 2017) (finding a plaintiff's verbal complaints to his employer regarding "unfair treatment" and his threats "to complain to the EEOC about a hostile work environment" to be inadequate, for purposes of establishing a *prima facie* case of retaliation, because nothing in the record suggested that the plaintiff complained to his employer about race or gender discrimination, specifically); *Hinds*, 523 F.3d at 1202 (holding that workplace emails, in which the employee stated "that he feels retaliated against for giving negative evaluations of managers," were not "protected activity," because the emails did not "mention or even allude to age or age discrimination") Accordingly, summary judgment is warranted on this claim, as well.

## E. Legitimate, Non-Discriminatory Reason

As a final matter, even assuming, in an abundance of caution, that Torres could establish a *prima facie* case under Title VII, he has failed to rebut the CDOC's legitimate, non-discriminatory reasons for its actions. The CDOC has presented evidence showing that Torres was terminated, based on the nature and severity of his conduct in connection with two separate professional standards investigations, and because of his violations of multiple CDOC policies. (White Aff. ¶¶ 28-32.) Plaintiff has presented no evidence that raises a genuine issue on whether Defendant's proffered reasons are pretextual.

Accordingly, it is

**ORDERED** that "Defendant's Motion for Summary Judgment" (Doc. No. 33) is **GRANTED**.  Plaintiff's case is **DISMISSED with prejudice** to a refiling.

Dated this 21st day of September, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge